IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN R. MCNAIR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:10-CV-560-WKW [WO] |
| | ) | |
| MACON COUNTY GREYHOUND | ) | |
| PARK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action arises out of a contract for marketing services and alleged

misrepresentations made by one of the parties to that contract.  Before the court is a Motion

to Dismiss the Amended Complaint (Doc. # 17), filed by Defendant Macon County

Greyhound Park ("MCGP").  The motion is accompanied by a memorandum of law.  (Doc.

# 18.)  Plaintiff Kevin R. McNair ("McNair") filed a response and a memorandum of law in

opposition to the motion (Docs. # 22-23), to which MCGP filed a reply (Doc. # 31).  For the

reasons that follow, the motion is due to be granted in part and denied in part.

**I.  JURISDICTION AND VENUE**

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1332(a).

Personal jurisdiction and venue are not contested, and there are adequate allegations of both.

**II.  STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the

legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  In ruling on a motion to dismiss, courts

"must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (citation and internal quotation marks omitted); *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) ("We have held many times when discussing a Rule 12(b)(6) motion to dismiss, that the pleadings are construed broadly, and that the allegations in the complaint are viewed in the light most favorable to the plaintiff." (internal citations and quotation marks omitted)).

To survive Rule 12(b)(6) scrutiny, however, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim, there are "plausible" grounds for recovery, and a motion to dismiss should be denied. *Twombly*, 550 U.S. at 556. The claim can proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (citation and internal quotation marks omitted).

### III.  BACKGROUND

Mr. McNair, a Nevada citizen, brings this breach-of-contract, fraud, unjust enrichment, and civil RICO action against MCGP, an Alabama corporation. (Am. Compl. ¶¶ 1-2.)

These parties were originally brought together by a contract for Mr. McNair to "develop, create, and execute approved marketing programs" for MCGP, doing business as Quincy's 777 casino.  (Am. Compl. ¶ 6; Am. Compl., Ex. 1 (the "Agreement").)   The Agreement was executed on September 20, 2008 by Mr. McNair and Dr. Lewis Benefield, Chief Operating Officer ("COO") of MCGP, Quincy's 777, and Victoryland Greyhound Park, and the Agreement became effective October 1, 2008.  (Agreement; Am. Compl. ¶ 11.) The Agreement called for Mr. McNair "to work at Quincy's five days per month, during the 12 month period" at a daily rate of $1,200, and for MCGP to pay him a $1,500 monthly retainer for a period of twelve months.  Mr. McNair also agreed not to "consult for any other gaming property within Alabama" during the term of the Agreement.

Mr. McNair fulfilled his obligations under the Agreement from September 2008 to February 2009, to include making monthly trips to Quincy's 777.  (Am. Compl. ¶ 7.)  In the early months of 2009, Mr. McNair began to hear "rumblings" from MCGP that he was being negative about how it was implementing or not implementing his marketing programs and policies.  (Am. Compl. ¶ 10.)  Mr. McNair then had a series of e-mail and telephone conversations with Dr. Benefield about problems that the Macon County Racing Commission (the "Commission") had with Mr. McNair.  (Am. Compl. ¶ 11.)  Mr. McNair alleges that the

Commission is a private corporation run by the same owner and management as Quincy's 777, and is also co-located in the same building as Quincy's 777.  (Am. Compl. ¶¶ 8-9.) These e-mail and telephone conversations occurred while Mr. McNair was in Nevada and Dr. Benefield was in Alabama.  (Am. Compl. ¶ 12.)  During these conversations, Dr. Benefield referred to the Commission as the "ultimate authority" and represented to Mr. McNair that even he, as COO of the Casino, was subject to the decisions of the Commission. (Am. Compl. ¶ 13.)  Dr. Benefield also told Mr. McNair that the Commission had state authority and the ability to adversely affect Mr. McNair's gaming license.  (Am. Compl. ¶¶ 13, 20.)  Dr. Benefield also represented to Mr. McNair that his gaming license was in jeopardy with the Commission.  (Am. Compl. ¶¶ 16, 21; Am. Compl., Ex. 2.)  Dr. Benefield made these representations with "full knowledge that the Commission had no independent state authority whatsoever and that it was a private corporation run by the company that he worked for."  (Am. Compl. ¶ 13.)  In fact, Alabama "has no authoritative [g]aming or [r]acing commissions."  (Am. Compl. ¶ 22.)     In one e-mail exchange, sent March 20, 2009, Dr. Benefield said to Mr. McNair, regarding the Commission:

> This is a tough one.  For now it doesn't look good.  Privately, I was told you "are very negative about Vland, its policies, and its employees."  I do not know what they have on you, but an outsider killing employee morale will be punished here.  The things I have reviewed don't do you any favors, and at times really piss me off.
>
> The answer I received (again off the record) was: it would disappear, as a favor to me, if you never had contact with Vland again.  Or, I can let it run its course and may still have the benefit of your expertise.  The problem with the latter, you probably will get banned from the property anyway AND a blemished commission record.
>
> You decide - I can talk later - now is not a good time.

I am sorry about your financial situation, but that is really not relevant to this issue.

(Am. Compl., Ex. 2.)

Further, in a recorded telephone message on March 21, 2009, Dr. Benefield said to

Mr. McNair that showing up to work in Alabama "would not be the best thing for you" in

reference to the penalties that would be levied against him by the Commission, including a

"blemish on his Commission record." (Am. Compl. ¶ 17.)  Besides these two messages,

MCGP made numerous other telephone and e-mail communications to Mr. McNair

describing similar consequences if he were to come to Alabama to work for MCGP.  (Am.

Compl. ¶ 18.)

Mr. McNair believed that his professional record, future ability to work, livelihood,

and personal safety had been threatened by MCGP because a "blemish on his gaming license

in other states [would be] fatal." (Am. Compl. ¶ 19.)  Mr. McNair alleges that because of Dr.

Benefield's aforementioned representations and his belief that his gaming license was in

jeopardy, Mr. McNair did not travel to Alabama in March 2009 or afterward.  (Am. Compl.

¶¶ 19-21, 26, 30.) In fact, Dr. Benefield's representations about the Commission's state

authority, the Commission's ability to affect his gaming license, and the status of his gaming

license were false.  (Am. Compl. ¶¶ 20, 37.)

MCGP's alleged failure to perform and hindering of Mr. McNair's performance under

the contract form the basis for his breach of contract claim in Count I, which MCGP does not

challenge in this motion. (Am. Compl. ¶ 34.) MCGP's alleged misrepresentations about the

authority of the Commission and threats to Mr. McNair's gaming license form the basis for

his fraud claim in Count II.  (Am. Compl. ¶¶ 13-22, 37-40.)  Count III of the Amended

Complaint is an unjust enrichment claim that Mr. McNair has expressly waived.  (Pl.'s

Response 2 (Doc. # 22).)  MCGP's alleged conduct of an enterprise with the Commission

and subsequent acts of mail and wire fraud form the basis for his federal RICO claim in

Count IV.  (Am. Compl. ¶¶ 49-54.)  Only Counts II and IV are at issue in MCGP's motion

to dismiss.

Mr. McNair seeks compensatory damages for breach of contract, both compensatory

and punitive damages for fraud, and treble damages for the alleged RICO violation.  Costs,

to include attorney's fees, also are sought.  (Am. Compl. 8.)  Mr. McNair demands a jury

trial.  (Compl. 1.)

## IV.  DISCUSSION

MCGP contends that this action is "based on nothing more than the breach of contract

allegations," that the fraud and RICO claims are not sufficiently stated to meet the

requirements of Federal Rule of Civil Procedure 9(b), and that Mr. McNair has fails to plead

the requisite elements of a RICO claim.  (Def.'s Mem. of Law 2-3.)  MCGP thus moves to

dismiss Mr. McNair's fraud and RICO claims.  Mr. McNair argues against their dismissal.

The Motion to Dismiss the Amended Complaint is due to be denied on the fraud claim

and granted on the RICO claim.

## A.    Fraud/Misrepresentation (Count II)

A claim of ordinary fraud is in fact a claim of fraudulent misrepresentation.  *U.S.*

*Diagnostic, Inc. v. Shelby Radiology, P.C.*, 793 So. 2d 714, 720-21 (Ala. 2000), *overruled*

*on other grounds by Bruce v. Cole*, 854 So. 2d 47, 58 (Ala. 2003).  The elements of a

fraudulent misrepresentation claim are: (1) a false representation; (2) concerning a material

fact; (3) plaintiff's reliance on the false representation; and (4) actual injury resulting from

that reliance.  *See Consol. Constr. Co. of Ala. v. Metal Bldg. Components, L.P.*, 961 So. 2d

820, 825 (Ala. 2007).

> ***1.       Whether Mr. McNair Pleads a Fraud Claim Independent of His Breach-of-***
>
> ***Contract Claim***

MCGP argues that Mr. McNair's fraud claim may not proceed because his "claims

of fraud are based solely on the allegation that MCGP breached the [c]ontract."  (Def.'s

Mem. of Law 4.)  It is true that "[a] mere failure to perform a contract obligation is not a tort,

and it furnishes no foundation for an action on the case."  *C & C Prods., Inc. v. Premier*

*Indus. Corp.*, 275 So. 2d 124, 130 (Ala. 1974).  In *Brown-Marx Assocs., Ltd. v. Emigrant*

*Savs. Bank*, 703 F.2d 1361 (11th Cir. 1983), applying Alabama law, the Eleventh Circuit

similarly explained that a "[f]ailure to perform a promise is not of itself adequate evidence

of intent to support an action for fraud.  A mere breach of a contractual provision is not

sufficient to support a charge of fraud."  *Id.* at 1370-71; *see also Dickinson v. Land*

*Developers Constr. Co.*, 882 So. 2d 291, 303-06 (Ala. 2003) (Houston, J., concurring) ("[I]t

is clear that to assert a fraud claim that stems from the same general facts as one's

breach-of-contract claim, the fraud claim must be based on representations independent from

the promises in the contract and must independently satisfy the elements of fraud." (emphasis

omitted)).

MCGP cites *Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272 (M.D. Ala. 2007), as an analogous case.  There, the plaintiffs conceded that they were "merely alleging a written misrepresentation in the contract as the *only* basis for their fraud and suppression claims."  *Id.* at 1275.  Because the plaintiffs' fraud claim focused on the defendant's failure to reimburse plaintiffs in the manner agreed to in the contract, the court found that the "dispute boil[ed] down to the interpretation of an undefined or ambiguous contract term."  *Id.* at 1276.  It was "a classic breach of contract claim, rather than a claim for fraudulent misrepresentation."  *Id.* at 1277.

Mr. McNair argues that this case is different than *Pearson's Pharmacy* because here, the alleged misrepresentations were made during the performance of the contract and they were "independent and totally separate from the promises in the contract."  (Pl.'s Mem. of Law 2.) Mr. McNair says that MCGP did not make misrepresentations about whether or how it would pay him for his services, but rather it misrepresented to him that his gaming license was in jeopardy with the Commission and that he would be physically escorted off of MCGP's property by the Commission if he stepped foot on it. (Pl's Mem. of Law 2.)

Mr. McNair's argument is stronger.  This is not a case like *Pearson's Pharmacy*, where the plaintiffs had not "specifically alleged a written or oral misrepresentation extraneous to the face of the contract," and instead relied solely on an ambiguous or undefined contract term to support their fraud claim.  *Pearson's Pharmacy*, 505 F. Supp. 2d at 1277.  Here, MCGP's alleged misrepresentations were extraneous to the face of the contract and had no roots in the language in the contract.  Rather, MCGP's alleged

misrepresentations concerned the power of the Commission and the status of Mr. McNair's

gaming license, not MCGP's promise in the contract to pay for Mr. McNair's services. *See*

*Dickinson*, 882 So. 2d at 304.  Though one result of MCGP's misrepresentations was that Mr.

McNair did not travel to Alabama to perform *his* obligation under the contract, such a result

does not shield MCGP from a fraud suit.  Nor does the fact that Mr. McNair alleges that

MCGP breached the employment contract in Count I absolve it of potential liability for fraud

in Count II.

MCGP also argues that Mr. McNair's fraud claim is only based on MCGP's alleged

failure to perform under the contract because it could have "demanded or ordered that

McNair not come back to the property" and likewise achieved termination of Mr. McNair's

employment contract.  (Def.'s Mem. of Law 6.)  MCGP's argument is unavailing because

though it could have simply told Mr. McNair not to come to Alabama or refused to pay Mr.

McNair, it instead made misrepresentations to Mr. McNair that had multiple effects, not just

MCGP's breach of the contract.[1]  Mr. McNair's fraud allegations are not simply that MCGP

intentionally, or even in bad faith, broke a contractual promise.  *See Hunt Petroleum Corp.*

*v. Alabama*, 901 So. 2d 1, 15 (Ala. 2004) (Houston, J. concurring).  Nor is this a case of

fraud in the performance of a contract.  As discussed at length in the *Dickinson* concurrence,

fraud in the performance of an obligor's contracted promise does not, in and of itself, give

rise to a fraud claim for the other party.  *Id*; *Brown-Marx Assocs.*, 703 F.2d at 1370 ("Failure

---

[1] Though MCGP does not contest Mr. McNair's breach of contract claim at this stage of the
litigation, it states that "MCGP denies that McNair was unable to perform pursuant to the [c]ontract terms
and affirmatively asserts that McNair abandoned the contract."  (Def.'s Mem. of Law 2.)

to perform a promise is not of itself adequate evidence of intent to support an action for fraud.  A mere breach of a contractual provision is not sufficient to support a charge of fraud." (internal citations ommitted)).  Fraud in the performance cases do not give rise to claims for damages for fraud, unless "there is damage due to fraud that is separate from damages that may result from any subsequent contractual breach." *Dickinson*, 882 So. 2d at 305 (internal citation and quotations marks omitted).

Mr. McNair's fraud claim is distinguishable from a fraud in the performance claim or an allegation of an intentional breach of contract.  His fraud claim is not that MCGP made a misrepresentation in the contract negotiations or the contract itself as evidenced by its subsequent, intentional breach of the contract.  Rather, Mr. McNair's allegations are that MCGP made misrepresentations that were independent of and extraneous to the contract, that the misrepresentations were made after the contract was formed, and that the misrepresentations concerned a third party not subject to the contract.  Further, Mr. McNair's damages allegations include not only his pecuniary damages for his subsequent inability to perform under the contract, but also the severe emotional harm he suffered as a result of the allegedly false representations about the power of the Commission and the status of his gaming license. *See Dickinson*, 882 So. 2d at 305 (quoting *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712-13 (Fla. Dist. Ct. App. 1998)).  Because Mr. McNair allegations involve a "knowing false statement of fact made with the intent that it cause action in reliance and it [did] cause such action to the detriment of the victim of the knowing false statement," he may, at this stage, maintain an action for both fraud and breach of

10

contract on the same set of operative facts. *Hunt Petroleum Corp.*, 901 So. 2d at 13 (citation, emphasis, and internal quotations marks omitted).

### 2.    *Whether Mr. McNair Adequately Pleads the Fraud Claim under Rule 9(b)*

MCGP further argues that, pursuant to Rule 9(b), Mr. McNair fails to adequately plead the circumstances constituting the alleged misrepresentations and reasonable reliance. (Def.'s Mem. of Law 6-9.)  Mr. McNair responds that he meets the requirements of Rule 9(b).

Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex. rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002).  Under Rule 9(b), the plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

MCGP contends that Mr. McNair does not plead any alleged misrepresentations because the Amended Complaint only provides specifics concerning Dr. Benefield's two communications, "which on their face, are certainly not fraudulent misrepresentations." (Def.'s Mem. of Law 7.)  MCGP's argument is misplaced on a motion to dismiss.  Rather

than taking the allegations in the Amended Complaint as true, MCGP asks the court to draw

a factual conclusion about the truth of Dr. Benefield's communications. *Cf. Paradise Divers,*

*Inc.*, 402 F.3d at 1089. Likewise, MCGP's argument that the entirety of the e-mail exchange

between Dr. Benefield and Mr. McNair "negate[s] any notion that the two communications

McNair refers to contain fraudulent statements" is misplaced on a motion to dismiss. (Def.'s

Reply 3.)

MCGP also argues that Mr. McNair fails to plead reasonable reliance with specificity

because he "does not allege reliance in the Amended Complaint at all." (Def.'s Mem. of Law

8.) MCGP is mistaken, and the argument fails. Mr. McNair pleads that he "relied on [Dr.

Benefield's] statements and was misled into believing that his license was in jeopardy" and

that he heeded Dr. Benefield's warning by "not travel[ing] to Alabama in March 2009 or in

any month since." (Am. Compl. ¶¶ 21, 26.) These allegations plainly refer to the alleged

misrepresentations detailed in paragraphs 11-19 of the Amended Complaint, which

incorporated the attached March 20, 2009 e-mail from Dr. Benefield. Mr. McNair also

pleads reliance on the allegedly fraudulent statements in paragraph 30 of the Amended

Complaint. (Am. Compl. ¶ 30 ("Plaintiff has suffered unemployment, damage to his credit

score, drained personal resources, and severe emotional harm as a result of this matter . . .

and his reliance on the fraudulent statements made by [D]efendant.").)

MCGP's remaining Rule 9(b) arguments attempt to import its earlier argument about

whether Mr. McNair states a fraud claim independent of his breach of contract claim. (Def.'s

Mem. of Law 8-9 ("There are no facts asserted that MCGP at any particular time or place

made a written or oral representation outside of the allegations of simple non-performance.").)  Because these arguments have already been dealt with, they will not be readdressed here.  Finally, the court again notes that MCGP does not argue that Mr. McNair's fraud allegations fail to meet the other elements of a fraud claim under Alabama law.

**B.     RICO Claim (Count IV)**

In the Amended Complaint, Mr. McNair added a count for treble damages under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964(c), presumably for violations of § 1964(c).

MCGP argues that Mr. McNair's RICO claim is due to be dismissed because he does not sufficiently allege an enterprise, continuity of a racketeering pattern, or causation. (Def.'s Mem. of Law 12.)  MCGP further argues that the RICO fraud allegations do not satisfy Rule 9(b).  (Def.'s Mem. of Law 12.) Mr. McNair contends that he meets the requirements for RICO pleading, and that his claim sufficiently states the elements of fraud with particularity.  (Pl.'s Mem. of Law 8-9.)

A § 1962(c) RICO claim has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  "[A] pattern of racketeering activity" requires that at least two acts of racketeering activity have occurred within a prescribed time period.  18 U.S.C. § 1961(5).  As relevant here, mail fraud and wire fraud constitute racketeering activity.  § 1961(1)(B).  Because the "alleged pattern of

racketeering consist[s] entirely of the predicate acts of mail and wire fraud, [Mr. McNair's] substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard. . . ." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Mr. McNair fails to adequately plead the existence of an enterprise or that each member of the alleged enterprise had a common purpose. "With regard to elements (1) and (2) of the four part test under § 1962(c), the plaintiff[] must establish 'conduct of an enterprise' and that the enterprise had a common goal." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1283 (11th Cir. 2006). The existence of an enterprise requires allegations "of an ongoing organization, formal or informal and . . . that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Further, "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes." *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000).

Mr. McNair alleges that the Commission is a private corporation operating within the same building as Quincy's 777 casino and is "run by the same owner/management as Quincy's 777 casino." (Am. Compl. ¶¶ 8-9.) Mr. McNair also alleges that "Quincy's 777 Casino, in conjunction with and under the guise of authority and legitimacy, uses the 'Commission' to engage in hostile, fraudulent, illegal and irresponsible activities in their business operations." (Am. Compl. ¶ 24.) Both of these allegations fail to adequately state

14

a claim for relief under elements (1) and (2) of a RICO claim. These allegations do not establish that the Commission functions as a continuing unit with MCGP. Mr. McNair's allegations are merely that Quincy's 777 "use[d]" the Commission and the guise of its authority and legitimacy to undertake fraudulent and illegal activities. Such an allegation provides no factual support for the Commission's actual participation or involvement in an enterprise with MCGP. Though MCGP and the Commission may be owned and run by the same management, the Amended Complaint only provides factual support for MCGP's alleged use of the Commission's authority, without providing any factual support that the Commission concomitantly knew about and participated in the alleged enterprise. Nor does the fact that both MCGP and the Commission reside in the same building provide plausible factual support that MCGP and the Commission were acting together as an enterprise against Mr. McNair. Thus, Mr. McNair's allegations do not provide sufficient factual support on the "conduct of an enterprise" element of a RICO claim. *Iqbal*, 129 S. Ct. at 1949.

Nor does Mr. McNair allege that MCGP and the Commission had a common purpose in engaging in the commission of the alleged predicate acts. "The enterprise is an entity . . . associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583. "[A]ll that is required is that the enterprise have a common purpose," not that each and every member of the enterprise have the identical sole purpose. *Williams*, 465 F.3d at 1286. The Amended Complaint does not allege a common purpose between MCGP and the Commission, and provides no factual support for such a common purpose. Because Mr. McNair does not adequately plead either conduct of an enterprise or

15

that the enterprise had a common goal, his civil RICO claim is due to be dismissed.  Given

that the RICO count fails to satisfy *Iqbal*, the court need not address MCGP's other

arguments.

## V.  CONCLUSION

Based on the foregoing, Plaintiff Kevin R. McNair's unjust enrichment and RICO

claims against Defendant Macon County Greyhound Park fail, but the breach of contract and

fraud claims survive the present motion to dismiss.  Accordingly, it is ORDERED that

Defendant's Motion to Dismiss the Amended Complaint (Doc. # 17) is GRANTED as to the

unjust enrichment claim in Count III and the RICO claim in Count IV, and DENIED as to

the fraud claim in Count II.

DONE this 14th day of March, 2011.


<u>          /s/ W.  Keith Watkins          </u>
UNITED STATES DISTRICT JUDGE